### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA

### CASE NO.  20-CV-80001-ROSENBERG/REINHART

CUTLASS COLLIERIES, LLC, n/k/a
VISTA ENERGY RESOURCES, LLC,

   Plaintiff/Counterdefendant,

v.

GARRETT MYRON JONES,

   Defendant/Counterclaimant.

_____ /

### OMNIBUS ORDER ON ALL PENDING MOTIONS

  This matter is before the Court on the Plaintiff Vista Energy Resource's Motion for Summary Judgment [DE 65], the Defendant Garrett Jones' Motion for Partial Summary Judgment [DE 66], the Plaintiff's Motion to Strike Defendant's Affidavit [DE 80], the Plaintiff's Second Motion to Strike Defendant's Affidavit [DE 84], the Plaintiff's Motion in Limine [DE 67], and the Defendant's Motion in Limine [DE 69].  All motions have been fully briefed.  For the reasons set forth below, the Plaintiff's Motion for Summary Judgment is granted in part and denied in part, the Defendant's Motion for Summary Judgment is denied, the Plaintiff's Motions to Strike Affidavits are granted in part and denied as moot in part, and the parties' Motions in Limine are both denied.

### I.  INTRODUCTION

  This is a case that looks at the intersection of oral agreements, employment contracts, and at-will employees.  An at-will employee may, as a general matter, be terminated for any reason.  But what happens when there is an alleged *oral* agreement *not* to terminate an

employee, and there is also a *written* employment contract, but the written contract contains no reference whatsoever to the oral agreement?  That, in a nutshell, is this case.

## II.    BACKGROUND FACTS AND PROCEDURAL HISTORY[1]

The Plaintiff is a coal-mining company that operates a mine in Canada. DE 68 at 1.  In early 2017, the CEO for the Plaintiff telephoned the Defendant. *Id.*  Through that phone call and discussions that followed, the Plaintiff recruited the Defendant. *Id.*  The Plaintiff recruited the Defendant because of his experience as a manager in the mining industry, but one particular area of expertise that the Defendant possessed was in the negotiation and acquisition of expensive mining equipment. *Id.*

The parties have some disagreements over the discussions and negotiations that surrounded the Defendant's recruitment.  From the Defendant's perspective, the Defendant already possessed a stable, lucrative position in the mining industry. *Id.* at 2-3.  The Defendant's compensation with his prior employer included non-vested retirement benefits, and the Defendant was concerned that, if he left his position and worked for the Plaintiff, he could become unemployed when his services were no longer needed and, together with the prospect of becoming unemployed, he would have foregone the possibility of working for his prior company until his retirement benefits vested. *Id.*  To alleviate his concern, the Defendant contends that he requested the right to continue working until turning sixty-seven years old— he requested a guaranteed period of employment for ten years. *Id.* at 4.  The Defendant further contends that the Plaintiff orally accepted the Defendant's request, but the alleged acceptance

_____

1 The facts set forth in this section are, for the most part, undisputed.  When a fact is disputed, the Court notes the dispute by setting forth the parties' different positions.

and right-to-work for ten years was never recorded into a written instrument. *Id.* at 4-5.  Later, the Defendant signed a written employment contract with the Plaintiff, but the guarantee for ten years of employment was not included in the contract. *Id.* at 5.  For the Plaintiff's part, the Plaintiff contends that there was never any agreement to guarantee the Defendant a period of employment for ten years. DE 64 at 2.

For two and a half years, the Defendant worked for the Plaintiff. DE 68 at 6-9.  During that time, the Defendant had various duties. *Id.*  Over time, some of those duties were reassigned to other people, but the Defendant always remained responsible for the purchase and acquisition of mining equipment. *Id.*  According to the Plaintiff, in late 2019 the mine began to experience financial difficulties, and because of those difficulties, the Plaintiff began to look for employees who could be terminated to save costs. *See* DE 64 at 9-10.  Also according to the Plaintiff, because there was no longer a pressing need to acquire equipment for the mine, the Defendant's significant salary presented a good opportunity for cost-cutting and, in November of 2019, the Defendant was terminated.[2] *Id.*  According to the Defendant, he was terminated not because of his salary, but because of his age. DE 75 at 5.

Because the Defendant contends that he was fired due to his age and because of the Defendant's contention that he had a bargained-for right to work for ten years, the Defendant threatened to file suit.  The Plaintiff pre-emptively initiated suit first, however, and filed this action on January 2, 2020.  The Plaintiff brings one count, a count for declaratory judgment,

---

[2] During the course of this litigation, the Plaintiff has proffered other reasons why the Defendant was terminated. Those other grounds for termination are addressed in Section V.

and seeks a declaration that it was entitled to terminate the Defendant because there was no enforceable agreement to guarantee the Defendant ten years of employment.

For his part, the Defendant filed an amended Counterclaim on June 2, 2020.  In his Counterclaim, the Defendant brings two counts.  The first is for breach of contract, wherein the Defendant contends that he had an agreement to work for ten years, which the Plaintiff breached.  The second is for age discrimination, wherein the Defendant contends that he was terminated on account of his age.

The Plaintiff filed a Motion for Summary Judgment, seeking (i) to prevail on its own count for declaratory judgment and (ii) for summary judgment to be entered against the Defendant's competing count for breach of contract and the Defendant's age discrimination count.  The Defendant filed a cross-motion, a Motion for Partial Summary Judgment, seeking (i) to prevail on his own counts for breach of contract and age discrimination, and (ii) for the Count to enter judgment against the Plaintiff's claim for declaratory judgment.  Relatedly, the Plaintiff filed two Motions to Strike, seeking to strike affidavits authored by the Defendant to (i) obtain summary judgment for himself and (ii) resist summary judgment for the Plaintiff.  Finally, both parties filed Motions in Limine wherein the parties seek to strike the opposing damages expert.

The Court begins its analysis in Section IV with the parties' competing breach-of-contract claims.  Because the Plaintiff's Motions to Strike are relevant to the Court's analysis of breach of contract, the Motions to Strike are addressed in Section IV.  The Court then turns its attention in Section V to the Defendant's age discrimination claim.  Finally, in Section VI the Court addresses the parties' competing Motions in Limine.

4

### III.    THE SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48). A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006). The Court does not weigh conflicting evidence. *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007). Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment. *See id.*

### IV.    LEGAL ANALYSIS AND DISCUSSION – BREACH OF CONTRACT

The Plaintiff seeks a declaration that it was entitled to terminate the Defendant and that its termination did not breach its employment contract with the Defendant. In his cross-motion, the Defendant requests summary judgment on effectively the same question—did his termination amount to a breach of contract? As a threshold matter, the parties dispute what body of law applies to the breach of contract questions in this case. The Plaintiff argues that

5

West Virginia law applies, while the Defendant argues for North Carolina law.   The Court therefore considers (A) choice-of-law principles, (B) the law of the West Virginia, and (C) the law of North Carolina, before finally reaching (D) the Court's conclusion.

### A.  CHOICE OF LAW

Federal courts sitting in diversity apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1996).   For contract claims, Florida applies the *lex loci contractus* rule. *Goodman v. Olsen*, 305 So. 2d 753, 755 (Fla. 1974).   Under that rule, the operative question is where a contract was made. *Ray-Hof Agencies, Inc. v. Petersen*, 123 So. 2d 251, 253 (Fla. 1960).   A contract is made where the last act necessary to complete the contract is performed. *Id.*

The parties dispute where the last act to complete the employment contract occurred. The Plaintiff contends the last act was in West Virginia, and the Defendant contends that the last act was in North Carolina.   The factual basis for West Virginia is that, during (telephonic) oral negotiations, the Defendant stated he would only leave his prior place of employment if he could work for the Plaintiff until he was sixty-seven. DE 64 at 3-4 (undisputed by Defendant). When the Plaintiff's representative allegedly accepted this proposed term, he was located in West Virginia. *Id.* (undisputed as to location).   The factual basis for North Carolina is that when the Defendant received and signed the Plaintiff's formal, written offer of employment (which did *not* contain the right to work until age sixty-seven), the Defendant was located in North Carolina. *Id.* at 4 (undisputed).

The parties' disagreement centers on how many agreements the parties had.   From the Plaintiff's perspective, the Defendant's position is necessarily that there were *two* agreements—

one oral and one written—because, if there was a single agreement, the right-to-work term would have been included in the written offer.[3]  From the Defendant's perspective, there was only one agreement, but that agreement had both oral and written terms.  The ultimate source of this disagreement is the fact that the written contract did not contain an integration clause. *See* DE 68-7.

Because the parties disagree about which body of law the Court should apply, the Court considers the law of both West Virginia and North Carolina to determine whether the laws of the two States "differ or would produce different results in the case." *AIG Premier Ins. Co. v. RLI Ins. Co.*, 812 F. Supp. 2d 1315, 1321 (M.D. Fla. 2011). For the reasons set forth below, the Court's conclusion is the same under either body of law.

## B.  BREACH OF CONTRACT UNDER WEST VIRGINIA LAW

Under the law of West Virginia, the Court's analysis is succinct.  West Virginia has a statute of frauds which reads as follows:

> No action shall be brought . . . [u]pon any agreement that is not to be performed within a year . . . [u]nless the offer, promise, contract, agreement, . . . or some memorandum or note thereof, be in writing and signed by the party to be charged thereby or his agent.

W. Va. Code § 55-1-1.  Here, the alleged promise was that the Defendant was guaranteed the opportunity to work for the Plaintiff for ten years which cannot, of course, be accomplished "within a year."  It is undisputed that this alleged promise was never reduced to writing.  DE 75 at 3.  Thus, were West Virginia law to apply in this case, the Plaintiff would prevail and the Court would deny the Defendant's request for summary judgment.

---

3 In the alternative, the Plaintiff contends that there was no oral agreement at all.

### C.  BREACH OF CONTRACT UNDER NORTH CAROLINA LAW

North Carolina law is more complicated.  North Carolina is an employment-at-will state. *Kurtzman v. Applied Analytical Indus., Inc.*, 347 N.C. 329, 331 (1997).  As such, the Supreme Court of North Carolina "has repeatedly held that in the absence of a contractual agreement between an employer and an employee establishing a definite term of employment, the relationship is presumed to be terminable at the will of either party without regard to the quality of performance of either party." *Id.*  The presumption in favor of at-will employment is strong. *E.g., Franco v. Liposcience, Inc.*, 197 N.C. App. 59, 63 (2009).  The burden is upon the Defendant to establish an exception to this presumption. *See, e.g.*, *McMurray v. Cochrane Furniture Co.*, 109 N.C. App. 52, 54 (1993).  The Defendant argues that he overcomes the presumption via three different exceptions: the definite period of employment exception, the additional consideration exception, and the public policy exception.  Each exception is discussed in turn.

<u>The Definite Period of Employment Exception</u>

In North Carolina, the presumption of at-will employment may be overcome if the contract for employment is for a definite term.  For a contract to be for a definite term, there must be a "fixed period capable of exact measurement," a "set date certain in the future," and not be dependent "upon the unilateral decision of the employee." *Kristufek v. Saxonburg Ceramics, Inc.*, 901 F. Supp. 1018, 1025 (W.D.N.C. 1995).  The case of *Kristufek v. Saxonburg Ceramics, Inc.* is instructive on this point.  In *Kristufek*, an employee was asked by his employer to move to a different city. *Id* at 1021.  The employee agreed to move, but only after the

employer allegedly promised that he could continue to work at the company until he decided to retire. *Id.* Before his retirement, however, the employee was terminated due to a corporate restructuring. *Id.* The employee filed suit for breach of contract. *Id.* The *Kristufek* court surveyed North Carolina law, and found that an employment contract must not "in some form purport to provide for permanent employment, as where the agreement is for the employee to have a permanent position … for … as long as the employee desires the position." *Id.* at 1025 (citing *Tuttle v. Kernersville Lumber Co.*, 263 N.C. 216, 251 (1964)). For the definite term exception, there cannot be a promise of continued employment without a fixed date of termination, *e.g., McMurry*, 109 N.C. App. at 57, but in the instant case it is undisputed that there was no fixed date of termination. DE 64 at 304. The parties agree that, from the Defendant's perspective, he was free to work for as long as he liked. *Id.* From the Defendant's deposition:

> Q. You weren't required to work for any specific period of time?
>
> A. No.
>
> Q. [Mr. Snelling] never told you you had to work until 2026?
>
> A. No. As long as I wanted to work.
>
> Q. He never told you that you couldn't retire until you were 67?
>
> A. No.
>
> Q. He never told you you had to retire when you turned 67?
>
> A. No.
>
> . . .
>
> Q. Let's – let's try it this way. Was there a fixed end date on your agreement with Mr. Snelling?

A. No.

. . .

Q. So we've talked about you having the ability to stay on at Cutlass longer. You also could have left sooner, right?

A. That is correct.

Q. If another company made a better offer, you could have taken it and left Cutlass, right?

A. Yes.

Q. At any time?

A. Yes.

Q. Without penalty from Cutlass?

A. Yes.

Q. If you just didn't like Canada or didn't enjoy the work, could you have quit?

A. Yes.

Q. At any time?

A. Yes.

Q. And without penalty?

A. Yes.

Q. You could have done all of that before you were 67 years old?

A. Yes.

DE 64-3 at 14:15–25, 15:22–24, 17:6–18:1, 67:19–23.  Thus, from the Defendant's perspective, he had unilateral control over how long he would work for the Plaintiff.

The Defendant does not adequately respond to cases such as *Kristufek* which stand for the proposition that an employee's unilateral control over a term of employment is inapposite with the definite term exception; the Defendant's response to *Kristufek* and the caselaw *Kristufek* relied upon is relegated to a footnote in his Response at docket entry 76.  In that footnote, the Defendant characterizes, for the first time, his employment contract as an "option contract" granting him the option to work for a number of years.  That position is unpersuasive for three reasons.

First, the word "option" does not appear in the Defendant's Answer or Counterclaim; a party may not amend a pleading in a response to a motion for summary judgment, particularly a footnote in a response. *E.g., Miccosukee Tribe of Indians v. U.S.*, 716 F.3d 535, 559 (11th Cir. 2013).  Second, the Defendant has provided no authority for the proposition that an "option contract" is recognized under North Carolina employment law, or otherwise obviates the need for a definite term of employment to satisfy the definite term exception.  Third and finally, what *is* established in North Carolina law is that for an employment contract to be for a definite period of time, the employee cannot have the unilateral right to end employment at any time— thus rendering the "definite" period of time indefinite. *See Elliot v. Enka-Candler Fire & Rescue Dep't, Inc.*, 213 N.C. App. 160, 163-64 (2011) (noting that a definite term only exists when it is binding on both parties).  For these reasons, the Defendant has not met his burden to overcome the strong presumption in favor of at-will employment to create a summary judgment question as to whether he qualifies for the definite period of employment exception; the Defendant does not qualify for that exception.

<u>The Additional Consideration Exception</u>

North Carolina law permits an employee-at-will contract to be amended, thereby changing the employee's status to one that cannot be terminated at-will, provided the amendment is supported by consideration. *E.g., Franco*, 197 N.C. App. at 63. This is known as the additional consideration exception. Here, the Defendant contends that the additional consideration he gave up, in exchange for the promise to be employed for ten years, is that he forwent certain *un*vested [4] retirement benefits at his place of prior employment. The Defendant's position is inapposite with North Carolina law.

The additional consideration that an employee gives up cannot be part of the "usual obligation of service." *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 590 (M.D.N.C. 2003) (citing *Walker v. Westinghouse Elec. Corp.*, 77 N.C. App. 253, 260-61 (1985)). "[S]acrifices [that] are simply part and parcel to accepting employment with a particular employer . . . do not warrant application of this exception." *Swanson v. Chem-Nuclear Sys.*, No. 5:06-CV-674, 1997 WL 33621597, at *2 (E.D.N.C. Sept. 15, 1997) (citing *Humphrey v. Hill*, 55 N.C. App. 359, 362-63 (1982)). Indeed, this exception, which has been called into doubt by the North Carolina Supreme Court,[5] has been recognized in the following, specific factual circumstances: (1) relinquishing a claim for personal injuries against the employer, (2) removing a residence from one place to another as a condition of employment, and (3) assisting

_____

4 The Court agrees with the Plaintiff that the Defendant has failed to show that foregoing *un*vested retirement benefits is consideration. The case upon which Defendant relies is too far removed from the case at bar (*Poore v. Poore*, 331 S.E.2d 266 (N.C. App. 1985) (dividing martial property)), and more applicable caselaw suggests the more persuasive, commonsense notion that for retirement benefits to have value, those benefit must have vested. *See Schimmeck v. City of Winston-Salem*, 130 N.C. App. 471, 473 (1998) ("In the context of retirement benefits, a contractual obligation exists once the employee's rights have vested.").

5 *Kurtzman*, 437 N.C. at 333 (stating that "plaintiff's contention that this exception is well established in our jurisprudence is incorrect; this Court has not heretofore expressly passed upon it;" and providing that the rule as stated . . . "is also disapproved.").

in the breaking of a strike. *Norman*, 286 F. Supp. 2d at 589.  None of these circumstances apply in the instant case, and North Carolina courts have "narrowly construed" the additional consideration exception, emphasizing that:

> Though the giving up of present or future jobs may be a detriment to the employee, it is also an incident necessary to place him in a position to accept and perform the contract. The abandonment of other activities and interest is "a thing almost every desirable servant does upon entering a new service, but which, of course, cannot be regarded as constituting any additional consideration to the master."

*McMurray*, 109 N.C. App. at 56, 57.  The exception has been construed so narrowly, that even a relocation of residence will not always trigger the exception.  *See Kristufek*, 901 F. Supp. at 1024-25.

Applying the exception to the instant case, it would be "part and parcel to accepting employment with a particular employer" to stop accruing credit towards retirement benefits with a *former* employer.  Similarly, it would be necessary for the Defendant to cease participation in an unvested retirement plan with his former employer "to place him in a position to accept and perform" with the Plaintiff.  This Court cannot "narrowly construe" the additional consideration exception, as it must,[6] by applying the exception to *un*vested retirement plans that an employee may or may not have qualified for, had the employee continued to work for his prior employer.  The Court also notes, without deciding, that the Defendant's allegation that he had accrued retirement benefits at his former position may be incorrect; furthermore, as a procedural matter, the Defendant may not have properly raised this issue via a statement of fact. *See* DE 86 at 5-7.  For all of the foregoing reasons, the Defendant has not met his burden to

---

6 This Court must follow the decisions of state intermediate appellate courts, absent persuasive evidence that the state's highest court would rule otherwise. *Bravo v. U.S.*, 577 F.3d 1324, 1326 (11th Cir. 2009).

overcome the strong presumption in favor of at-will employment to create a summary judgment question as to whether he qualifies for the additional consideration exception; the Defendant does not qualify for that exception.

The Public Policy Exception

In North Carolina, a presumption of at-will status may be overcome if an employee's termination was motivated by an unlawful reason that is against public policy. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572 (1999). The Defendant contends that he was terminated for complaining about mine safety and that the termination of an employee who complains about safety violates public policy. This argument is rejected for four reasons, each of which is argued by the Plaintiff.

First, the Defendant has not brought a case about safety or whistleblowing. The word "safety" does not appear in the Defendant's Counterclaim. The word "whistleblower" does not appear in the Defendant's Counterclaim. This is not a case about mine safety, this is a breach of contract case and an age discrimination case.

Second, when raising a public-policy exception, a party is required to identify a specific North Carolina policy that has been allegedly violated. *McDonnell v. Guilford Cnty. Tradewind Airlines, Inc.*, 194 N.C. App. 674, 677-78 (2009). This the Defendant has not done; the Defendant identifies no specific public policy, nor has the Defendant provided any legal citation to public policy in North Carolina. Relatedly, when raising a public-policy exception, a party is required to show that the remedy for the violation of public policy is not exclusive to some other forum, such as an administrative agency or a particular tribunal. *Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 356 (1993). This too the Defendant has not done.

14

Third, the Defendant's citation to record evidence to support his assertion that he complained about mine safety contravenes the orders of this Court.  At docket entry 9, this Court required that all citations to evidence be in a statement of material facts or a response to statement of material facts.  The Defendant's citation, however, is directly to a declaration, not a response to the Plaintiff's Statement of Facts.  And although the Defendant indirectly references safety concerns while *refuting* certain facts proffered by the Plaintiff, the Court previously required that if the Defendant wanted to set forth any "additional" facts of his own to resist summary judgment, those facts must be set forth in an independent section entitled "Additional Facts." *Id.* at 14.  This the Defendant did not do.

Fourth, in a Statement of Facts in support of his own cross-motion for summary judgment, the Defendant uses the word "safety" on only two occasions. DE 68 at 7.  In his Statement of Facts, the Defendant contends (via declaration) that he "observed various serious mismanagement issues," and that he "frequently" advised management of those issues. *Id.* at 6-7.  Among those issues were "safety risks." *Id.*  At this time, the Plaintiff's Motions to Strike Affidavits become relevant.[7]

In response to the Defendant's own Statement of Facts, the Plaintiff requests that the Court strike the Defendant's declaration that he complained about mine safety issues.  The basis for the Plaintiff's request is that a court may strike an affidavit that conflicts with earlier deposition testimony because "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out

---

7 The Plaintiff filed two motions to strike because the Defendant filed his declaration twice.

sham issues of fact." *Radobenko v. Automated Equip. Corp.*, 520 F.2d 540, 544 (9th Cir. 1975), *accord Van T. Junkins Assocs. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1987).  To establish that the Defendant's declaration about **frequently** reporting safety risks to his co-workers and management conflicts with earlier deposition testimony, the Plaintiff cites to the following deposition testimony where the Defendant testified about his interactions with other co-workers and management:

> Q. Did you get along with them well?
>
> A. For the most part.
>
> Q. What does that mean, "for the most part"?
>
> A. Well, I mean, I wrote Billy Curry up for disciplinary action.
>
> Q. **Any other negative interactions** with the clique?
>
> A. You know, this is – was a high stress environment, and – and there's always times that – that things happened and – and that sort of thing, but – but nothing that was some huge, you can't get along with this guy, or none of that kind of stuff there. It was none of that. You – **there's always occasional conflicts that go on in any environment**, in any job, any company and – and especially when the workload and the stress level is as high as it was on this.  **Sometimes there's disagreements**, **and you resolve them and move on**.
>
> Q. Was there more conflict between you and members of the clique, as you called it, than between you and other employees at Cutlass?
>
> A. I'm going to -- **I didn't have a lot of conflicts** with people at Cutlass.
>
> Q. But you did have conflicts with people in the clique, as you called it?
>
> A. No. **Just on individual situations that would arise from time to time**.

DE 80-1, at 146-48 (emphasis added).  Thus, instead of detailing his "frequent" complaints about safety, the Defendant testified that he did not have "negative interactions," and that he had "only occasional conflicts that go on in any environment."  The Court sets forth some of

the mine safety problems that the Defendant details in great length in his declaration: the discharging of "blackwater," the dumping of sulfuric acid, the failure to remove contaminated water, dangerously designed rock wall blasts, dangerously executed rock wall blasts, destabilized rock walls, overfilled storage facilities which created fire risks, the dumping of materials in compromised parts of the miner's center dump, the failure to "separate bentonite from seam coal before processing the coal," digging downhill in such a way as to cause destabilized supporting walls, inadequate rainwater runoff infrastructure, improper backfill of mining areas, the failure to supervise mine machinery, and the misuse of mine machinery. DE 75-3 at 9-12.   Thus, the Defendant's declaration characterizes the mine as an extremely dangerous worksite and that his many efforts to remedy the dangerous elements of the mine were thwarted by the Plaintiff.   When the Court juxtaposes the plethora of safety concerns that the Defendant "frequently" raised to management in the declaration with the routine, almost mundane interactions that the Defendant testified he had with management in his deposition, the Court agrees with the Plaintiff that the Defendant's deposition testimony is inconsistent with the Defendant's declaration—the touchstone for when an affidavit should be disregarded on summary judgment. *Liebman v. Metro Life Ins. Co.*, 708 F. App'x 979, 982 (11th Cir. 2017) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987)).

Pointing out that the Plaintiff did not *directly* ask a question about mine safety, the Defendant responds to the quoted deposition testimony above by citing to a response to interrogatories in discovery, contending that his response to interrogatories shows that the Plaintiff was on notice of his allegations of improper mine safety and his frequent reporting to management of the same.   That interrogatory response reads: "I complained to Mr. Beyer that,

17

among things, [sic] responsibilities that had been re-assigned from me and they were being mismanaged. That includes maintenance and mine optimization." DE 91 at 10.[8]  That response says nothing about mine safety, but instead puts the Plaintiff on notice of concerns of mismanagement, maintenance, and "mine optimization."

The Court considers the following in the totality: the Defendant's lack of legal citations to the public policy of North Carolina, the lack of allegations about mine safety in his Counterclaim, the Defendant's failure to cite to a statement of material fact for record evidence pertaining to mine safety, the Defendant's failure to utilize an "additional facts" section to raise a factual dispute about mine safety, the Defendant's deposition testimony essentially characterizing his interactions and reports to management as normal, the Defendant's failure to cite to evidence in discovery that would have put the Plaintiff on notice of the allegation of mine safety concerns, and, finally, the Defendant's decision not to move to amend his Counterclaim to allege a whistleblower claim involving mine safety.  In considering the foregoing, the Court grants the Plaintiffs' Motions to Strike the Defendant's Affidavit, at least to the extent the Defendant's declaration was intended to raise a question on summary judgment as to whether the Defendant qualifies for the public policy exception.[9]  Therefore, under North Carolina law, the Defendant has not met his burden to overcome the strong presumption in favor of at-will employment necessary to create a summary judgment question as to whether he qualifies for the public policy exception; the Defendant does not qualify for that exception.

---

8 The Defendant cites to a few other portions of the record, including other portions of his deposition testimony, but none of those citations have anything to do with mine safety or reporting of the same.

9 Because the remainder of the Motions to Strike target portions of the declaration that are not germane to the Court's decision, the Court denies the remainder of the Motions to Strike as moot.

18

### D. BREACH OF CONRACT CONCLUSION AND RULING

For all of the foregoing reasons, the Plaintiff prevails under West Virginia law and North Carolina law.  Under West Virginia law, the statute of frauds entitles the Plaintiff to relief.  Under North Carolina law, the Defendant has failed to rebut the strong presumption in favor of at-will employment.  The Plaintiff was entitled to terminate the Defendant and its termination did not breach its employment agreement with the Defendant.  Because the Court grants the Plaintiff its requested declaratory relief, it necessarily follows that the Defendant's cross-motion for summary judgment seeking the same relief is denied.[10]

### V.    LEGAL ANALYSIS AND DISCUSSION – AGE DISCRIMINATION

For the Defendant to prevail on an age-discrimination claim, he must first show that (1) he was a member of a protected class, being forty-years or older, (2) he was the subject of an adverse employment action, (3) he was replaced by a substantially younger person, and (4) he was qualified for his position.  *Aldabblan v. Festive Pizza, Ltd.*, 380 F. Supp. 2d 1345, 1351 (S.D. Fla. 2005).  The Defendant has adequate summary judgment evidence for all of the foregoing elements.  There is no dispute that the Defendant is greater than forty years of age and, because he was terminated, he was the subject of an adverse employment action. *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  Additionally, there is record evidence that the Defendant was replaced by persons much younger than him.  *See generally* DE 75; *see also* DE 76-16.  Finally, there is record evidence that the Defendant was qualified to do his job. *Id.* at 5.

---

10 Because the Court grants the Plaintiff this relief, it is not necessary for the Court to reach the other issues brought in the alternative by the Plaintiff, should the Court have ruled that the Defendant had a contractual right to remain employed for a certain period of time. *E.g.,* DE 65 at 2 ("[A]ssuming Defendant had a contractual right to employment at Cutlass until he turned sixty-seven, he is not entitled to any damages related to discretionary performance bonuses . . . .").

The burden therefore shifts to the Plaintiff to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *Chapman v. Al Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000).

The Plaintiff offers the following reasons why the Defendant was terminated: (1) the Defendant's position was no longer needed, (2) the Plaintiff questioned the Defendant's judgment, (3) the Defendant was "disruptive" and was not "a team player," and (4) the Defendant failed to execute a directive in connection with a specific transaction. DE 65 at 20. Each of these reasons is supported by summary judgment evidence, most notably the testimony of executives at Plaintiff. *See* DE 64 at 10-11. Because the Plaintiff has offered four nondiscriminatory reasons for termination, the burden shifts to the Defendant to show why the proffered reasons are merely pretextual. *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999). Each is discussed in turn.

<u>The Defendant's Position was no Longer Needed</u>

The Defendant cites to record evidence that his position *was* still needed, even after his termination. The Defendant cites to an e-mail communication between two of the Plaintiff's executives, which reads:

| From: | Michael Beyer |
| Sent: | Friday, October 11, 2019 2:59 PM CDT |
| To: | Delbert Lobb |
| Subject: | Re: Finning Cancelation Letter DRAFT |

Thanks for your thoughts

Sent from my iPhone

On Oct 11, 2019, at 11:50 AM, Delbert Lobb <dlobb@bighornmining.com> wrote:

> Mike – no problem with Jennifer handling these type issues with help from me. Myron handles these type discussions so the rest of us don't have to be bothered with it as it can eat up time and be aggravating. I would suspect as construction gets completed, the one off projects wind down and we hunker down to be a mining company, these type of one off issues will not be around. I believe this should be by year end. As we go forward, I want to be more involved in deciding what capex is spent and with whom. I am pretty sure that you would want me and Anthony to drive that versus Myron. Both of us have purchased hundreds of millions of dollars of equipment and know how to do it. This can all be accomplished with the help of Jennifer N and Jim Murphy's team in my opinion. The contacts that Myron touts with CAT/Komatsu/Joy etc are all people that Anthony and I know and have worked with in the past. I personally don't think we are the size company that needs an expensive corporate purchasing agent (just my opinion).
>
> D.L. Lobb
>
> From: Michael Beyer <mbeyer@clinegrp.com>
> Sent: Friday, October 11, 2019 12:22 PM
> To: Delbert Lobb <dlobb@bighornmining.com>
> Subject: Re: Finning Cancelation Letter DRAFT
>
> I'm fine
>
> BTW could Jennifer N handle this if Myron were not there? This situation/negotiation seems to be where he adds value. In his absence, who does this?

DE 76-16.  At summary judgment, the Court must view all evidence in the light most favorable to the non-moving party, here, the Defendant.  Viewed in that light, this e-mail stands for the proposition that the Defendant's duties would still be needed, post-termination, but that those duties would be assigned to other (younger) people.  In its Reply, the Plaintiff characterizes Defendant's usage of this e-mail as "distorted," but that does not change the light under which this Court must review record evidence.  The Defendant has adequate evidence to create a jury

question as to whether his position was, in fact, needed post-termination.  Because both sides have record evidence on this issue, this material fact cannot be decided on summary judgment.

The Plaintiff Questioned the Defendant's Judgment

The Defendant has record evidence that his job performance was excellent.  First, the Defendant cites to his own testimony, wherein he contends that, at the time of his termination, he was told that "he was not being terminated for performance." DE 68 at 10.  Second, the Defendant cites to the testimony of a supervisor: "Question: At what level would you describe that Myron Jones performed his job while at Cutlass while you were his supervisor?  Answer: Myron did everything I asked him to and he did it well. He was diligent. He was very detailed; that's his nature. And he performed extremely well in every task that I gave him, and I gave him quite a few tasks." DE 68-4 at 58.  At summary judgment, the Court must view all evidence in the light most favorable to the non-moving party, here, the Defendant.  Viewed in that light, this record evidence stands for the proposition that the Defendant's job performance was good.  The Defendant has adequate evidence to create a jury question as to his job performance.  Because both sides have record evidence on this issue, this material fact cannot be decided on summary judgment.

The Defendant was Disruptive, and the Defendant Failed to Follow a Directive

 To refute these nondiscriminatory grounds for termination, the Defendant relies upon several pieces of record evidence, including his own testimony about his job performance and the review of his job performance by a supervisor, quoted above.  Additionally, the Defendant relies upon the legal doctrine that when the explanations for a termination change over time, those shifting explanations may be evidence of pretext. *E.g., Bechtel Construction Co. v.*

22

*Secretary of Labor*, 50 F.3d 926, 935 (11th Cir. 1995).  The Court has closely examined the record evidence surrounding the reasons that the Defendant was given for his termination at the moment of his termination.  Although the parties dispute the specifics of what was said, the Court does not glean a summary judgment dispute on this particular issue: the Defendant was not told that his job performance, his  behavior, or his ability to follow directives was a basis for his termination.  For example, even in its Response to the Defendant's Statement of Facts supporting Defendant's Counterclaim, the Plaintiff says that the Defendant was told that the Plaintiff "no longer needed someone of the Defendant's caliber."  DE 81 at 11.  This case is therefore analogous to cases such as *Saridakis v. South Broward Hospital District*.  681 F. Supp. 2d 1338 (S.D. Fla. 2009).

In *Saridakis*, an employer proffered as a nondiscriminatory basis for termination that the employee was insubordinate, confrontational, and had poor clinical judgment. *Id.* at 1351. Yet the employer did not inform the employee of these grounds at the time of termination—the employee was told that there "was a new vision" for her department. *Id.*  Viewing the record evidence in the light most favor to the employee, the *Saridakis* court found that there was a summary judgment question as to why the employee had been fired. *Id.*  Just so here; the Defendant was not told that he was being terminated for being disruptive or for failing to follow a directive.  Both sides having record evidence in support of their positions, the Court cannot grant summary judgment on this material fact.

In conclusion, issues of material fact preclude summary judgment on the Defendant's age discrimination claim.[11]  Each party's request for summary judgment on the Defendant's age discrimination claim is denied.

### VI.  LEGAL ANALYSIS AND DISCUSSION – MOTIONS IN LIMINE

<u>The Plaintiff's Motion in Limine</u>

The Plaintiff's Motion in Limine seeks three forms of relief.  First, the Plaintiff moves to strike the Defendant's damages expert, which is addressed below.  Second, the Plaintiff moves to exclude certain evidence pertaining to the Defendant's former retirement plan as irrelevant.  Third, the Plaintiff moves to exclude certain pieces of evidence that were disclosed after the close of discovery in this case.  With respect to the Plaintiff's request to exclude certain evidence as irrelevant, that request is denied without prejudice to be re-raised, if necessary, at trial.  At trial, the Court will be in a better position to gauge the relevancy of disputed evidence because the Court will have the full context of the issues and evidence in this case, and the Court will also be a better position to gauge the impact, if any, of the Court's rulings on summary judgment.

With respect to the Plaintiff's request to exclude evidence that was disclosed after the close of discovery, there is no trial date in this case and the focus of the Court's analysis is prejudice.  *See* Fed R. Civ. P. 37(c)(1).  Due to the Covid-19 pandemic, jury trials in this district remain suspended.  The Court can discern no prejudice upon the Plaintiff for its receipt of evidence *one day* after the close of discovery, when much time has since passed and no trial

---

11 Because the Defendant's age discrimination claim survives summary judgment, the Court need not decide the other arguments that the parties make, in the alternative, as to this claim.

24

date is imminent.  The Plaintiff's request is denied, but should the Plaintiff continue to believe that it was prejudiced as a result of the late disclosure (such as the disclosure occurring subsequent to depositions), the Plaintiff is free to move for leave to take additional discovery.

Finally, the Court turns to the Plaintiff's request to strike the Defendant's damages expert, Mr. Robert Morrison.  Mr. Morrison estimated damages to the Defendant by calculating a certain sum the Defendant would have received in the future, but for the alleged wrongdoing by the Plaintiff, and then converted that sum—the future dollar amount—into a present-day dollar amount using what is known as a discount rate.  Distilled down, it is the Plaintiff's position that the discount rate used by Mr. Morrison was too low—it did not adequately take into account risk and it did not adequately take into account the inherent uncertainty in predicting the future.  Because of the low discount rate, the Plaintiff argues, Mr. Morrison does not have a reliable methodology and must be excluded from testifying under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

It is true that, in some circumstances, the use of a low discount rate, such as the "risk free" discount rate used by Mr. Morrison, is inappropriate if "risk has [not] already been reflected in the forecast of future damages." *Lary v. Boston Scientific Corp*, No. 11-CV-23820, 2014 WL 7152769, at *11 (S.D. Fla. Dec. 14, 2014).  Here, however, Mr. Morrison has an opinion why the risk-free rate would be appropriate, and his opinion centers on the conclusion that *if* the jury makes a factual finding about damages in the future, *then* the uncertainty of those damages is close to, or at, zero; Mr. Morrison's opinion is based upon his reading of caselaw. *E.g.*, DE 67-2 at 17-22.

"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.  The striking of an expert witness is a harsh sanction. *E.g., Catalina Rental Apartments, Inc. v. Pac. Ins. Co., Ltd.*, No. 06-CV-20532, 2007 WL 1050634, at *3 (S.D. Fla. Apr. 3, 2007).  At this juncture, the Court is not prepared to strike the Defendant's expert witness on damages.  At a minimum, the Court will permit Mr. Morrison to appear and explain his conclusions to the Court before the Court rules on the possible exclusion of his testimony.  In the Court's Order Setting Trial at docket entry 9, the Court outlines its pre-trial procedures.  Shortly before the beginning of the trial period, the parties shall file a notice of remaining issues that require adjudication.  If the parties still disagree at that time about the admissibility of Mr. Morrison's testimony, the Court will set a pre-trial hearing and permit the Defendant to raise a renewed motion in limine on this issue.  In any event, prior to seeking adjudication on this issue the parties should confer to see if they can reach an agreement that satisfies the Plaintiff's concerns, without requiring the wholesale exclusion of Mr. Morrison's testimony.  By way of example, the parties should consider whether Mr. Morrison could testify on discount rates in a general manner, and then, through the proper crafting of a jury instruction, leave the final determination of risk and uncertainty to the jury.  The Plaintiff's request to exclude Mr. Morrison's testimony is therefore denied without prejudice.

<u>The Defendant's Motion in Limine</u>

The Plaintiff retained a rebuttal expert for Mr. Morrison.  That rebuttal expert, Mr. Joseph Egan, developed his own opinion about an appropriate discount rate for damages in this

case.  In arriving at his conclusion, Mr. Egan assumed that the Defendant was an at-will employee that could be terminated at any time by the Plaintiff.  The Defendant moves to exclude Mr. Egan's testimony because it was error for Mr. Egan to assume that Defendant was an at-will employee.  But the Court has already ruled, in this Order, that Mr. Egan was correct.  As a result, the Court rejects this argument for exclusion.

The Defendant's remaining argument for exclusion is the inverse of the Plaintiff's challenge to Mr. Morrison.  Whereas the Plaintiff argues that Mr. Morrison's discount rate was too low (and therefore should be excluded), the Defendant argues that Mr. Egan's discount rate is too high and should therefore be excluded.  This argument is denied without prejudice[12] for the same reason the Plaintiff's inverse argument was denied without prejudice.  The parties may re-raise this issue anew at the appropriate time pursuant to the Court's pre-trial procedures at docket entry 9.

## VII.    CONCLUSION

For the foregoing reasons, it is **HEREBY ORDERED AND ADJUDGED**:

1. The Plaintiff's Motion for Summary Judgment [DE 65] is **GRANTED** insofar as the Court grants the Plaintiff's request for declaratory relief, finding that the Defendant was a terminable, at-will employee, but is **DENIED** in all other respects.  The Defendant's Age Discrimination Claim, Count II, survives.

2. The Defendant's Motion for Partial Summary Judgment [DE 66] is **DENIED**.

3. The Plaintiff's Motions to Strike Affidavits [DE 80, 84] are **GRANTED** as described in this Order but **DENIED AS MOOT** in all other respects.

4. The parties' respective Motions in Limine [DE 67, 69] are both **DENIED** as more fully described in this Order.

---

12 The Court also denies without prejudice the Defendant's arguments pertaining to the topic of mitigation of damages.

5.  The Court will set a new trial date and new pre-trial deadlines by separate order.

     **DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 8th day of

March, 2021.

                        ROBIN L. ROSENBERG

Copies furnished to Counsel of Record         UNITED STATES DISTRICT JUDGE