UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80001-ROSENBERG/REINHART

CUTLASS COLLIERIES, LLC, n/k/a
VISTA ENERGY RESOURCES, LLC,

    Plaintiff/Counterdefendant,

v.

GARRETT MYRON JONES,

    Defendant/Counterclaimant.
_____/

## SECOND ORDER ON EXHIBIT OBJECTIONS

The Court previously reviewed the parties' exhibit lists and the parties' objections to exhibits. Because the parties raised over 1,600 objections to the exhibits, the Court entered its first Order on Exhibit objections at docket entry 178, wherein the Court required the parties to file legal summaries of their various objections to the exhibits. The Court then reviewed the Plaintiff's (the Counter-Defendant's) summary of its objections to the Defendant's (the Counter-Plaintiff's) exhibit list, the Defendant's summary of his objections to the Plaintiff's exhibit list, the Plaintiff's response to the Defendant's summary of objections, and the Defendant's response to the Plaintiff's summary of objections. The Court then ordered the parties to deliver copies of the exhibits subject to the objections to Chambers, and the Court has reviewed the exhibits.

Because of the very large number of objections, the Court has endeavored, through this Order, to rule on as many objections as possible prior to trial. The Court has undertaken this effort to streamline trial and to respect the time commitment of the jury's public service. Should any party disagree with the Court's rulings herein, that party is not precluded from challenging the

Court's rulings and being heard on the matter; the party may raise any objection at trial to the Court's rulings herein, including the Court's interpretation of the parties' pretrial stipulation, discussed below. However, should any party raise an objection that is contrary to the Court's rulings in this Order, the party must inform the Court of the same and point the Court to the page and line number corresponding to the Court's prior ruling. In the event the Court overrules such an objection, the Court may incorporate its reasoning in this Order.

<u>The Pretrial Stipulation</u>

The Court begins its analysis of the parties' exhibit objections by referencing the parties' pretrial stipulation. This is an age discrimination case and, as a result, the central issue at trial will be: "Why was the Defendant terminated?" The Plaintiff sets forth its non-discriminatory reasons for terminating the Defendant on pages 10 and 11 of the pretrial stipulation:

> As Vice President of Purchasing, Mr. Jones led the effort to purchase … equipment. In 2019, however, the mine shifted from development (i.e., purchasing equipment and building a mine) to operations (i.e., mining and selling coal). At the same time, Cutlass was experiencing substantial financial stress. Indeed, throughout much of 2019, Cutlass was unable to make timely payments to its vendors.
>
> In February 2019, Michael Beyer became Cutlass's CEO. Mr. Beyer was tasked with, among other things, cutting unnecessary costs and making Cutlass profitable as a business. Throughout 2019, Mr. Beyer had the unfortunate task of identifying employees Cutlass could sever to stay afloat. As part of the critical effort to cut costs, Mr. Beyer terminated dozens of employees between February 2019 and November 2019. As Mr. Beyer became more acquainted with the mine, he identified Mr. Jones as a potential candidate for elimination in the Company's ongoing reduction in force, primarily because the skillset he was hired for—namely, to oversee large-scale purchasing of expensive mining equipment during the mine's development phase—was no longer needed. In addition, Cutlass already employed other individuals to handle the more mundane, day-to-day aspects of operational purchasing. And these employees had far lower salaries than Mr. Jones.
>
> Indeed, the need to eliminate Mr. Jones's position to cut costs was made clear in October 2019. At that point, DL Lobb—a 39-year veteran of the coal industry and president of the labor company Bighorn Mining (a Cutlass subsidiary)—shared his

> view with Mr. Beyer that Cutlass did not need "an expensive corporate purchasing agent" like Mr. Jones and that the "one off projects" where Mr. Jones sometimes added value would "wind down" as Cutlass shifted to a fully operational mine by year's end.
>
> In early November 2019, Mr. Beyer determined that Mr. Jones was not providing sufficient value to justify his high salary and that his position simply was not needed. As such, and to save costs, Mr. Beyer made the decision to eliminate Mr. Jones's position. Cutlass did not hire a replacement Vice President of Purchasing. It eliminated the position altogether.

The Court gleans from the pretrial stipulation that the Plaintiff avers it terminated the Defendant because: (1) the Plaintiff was experiencing financial difficulties, (2) the Defendant's compensation was high, (3) the Defendant's primary role and primary duties were no longer valuable to the Plaintiff, when those primary duties were juxtaposed to the Defendant's compensation, and (4) the Defendant's secondary/tertiary duties could be performed by other employees who worked for less compensation. Although the Plaintiff has at times in this case referenced other reasons that the Defendant was terminated,[1] those reasons do not appear in the Plaintiff's pretrial stipulation. Finally, the Plaintiff recently amended its pretrial stipulation to clearly stipulate: "Mr. Beyer [the Plaintiff's CEO] did not terminate Mr. Jones for performance-related reasons." DE 197 at 1.

"Parties are bound by their stipulations and a pretrial stipulation frames the issues for trial." *G.I.C. Corp. v. U.S.*, 121 F.3d 1447, 1450 (11th Cir. 1997); *Hodges v. U.S.*, 597 F.2d 1014 (5th Cir. 1979). The Court views the pretrial stipulation as a narrowing and framing of the central issue for trial—the Plaintiff's alleged non-discriminatory grounds for the termination of the Defendant. The Court therefore does not anticipate permitting the Plaintiff to rely upon such non-discriminatory grounds as the Defendant's poor performance or the Defendant's inability to get

---

[1] For example, the Plaintiff's operative answer alleges that the Defendant did not work amicably with his coworkers. DE 180 at 13.

3

along with others, and the Court's rulings in this Order are premised upon this conclusion.[2] With the case framed in this light, the Court turns to the parties' objections.

## 2014 Projections for the Coalspur Mine

### (Defendant's Exhibits 1 and 266)

The Plaintiff objects to the Defendant introducing evidence of financial projections for the mine at issue in this case—the Coalspur mine. The basis for this objection is that the projections were created in 2014 and the Defendant was terminated in 2019. The Plaintiff argues that the 2014 projections are not relevant to the financial status of the Plaintiff at the time the Defendant was terminated. In the alternative, the Plaintiff argues that the 2014 projections are unduly prejudicial.

In response, the Defendant argues that the documents "are relevant to show Cutlass still believed in [the projections] when Mr. Jones was terminated in 2019, as it had made more positive projections a few weeks before terminating Mr. Jones." DE 194 at 2.[3] The Court fails to see the relevance of 2014 projections in the year 2019, particularly when, according to the Defendant, more recent projections and data were available. The best evidence to show the financial status of the Plaintiff in 2019 is evidence from 2019. Or, at a minimum, projections created more recently than the year 2014. According to the Defendant, he is in possession of a projected budget for the years 2020-2024 that shows the Plaintiff would be profitable, and that the budget was created only a month before the Defendant's termination. The Plaintiff references other more relevant information (discussed below) about the Plaintiff's financial prospects in 2019 as well. In light of

---

[2] A party may only rely upon a defense absent from a pretrial stipulation if the inability to do so results in a "manifest injustice." *See G.I.C.*, 121 F.3d at 1450.

[3] The Defendant also argues that the documents were used to recruit the Defendant, however, the basis for the Defendant's recruitment is not the issue in this case—the issue is whether the Defendant was terminated due to his age.

4

such evidence, the Court **SUSTAINS** the Plaintiff's objection and excludes Defendant's Exhibits 1 and 266 as both exhibits are either not relevant or unduly prejudicial to the Plaintiff as the evidence would invite the jury to utilize outdated projections to evaluate the financial health of the Plaintiff, rather than evidence from the year 2019.

<u>Benefits Offered by the Defendant's Prior Employer</u>

(Defendant's Exhibits 2, 6, 11, 12, 15, 179, and 180)

The Plaintiff objects to the Defendant introducing documentary evidence of the benefits that the Defendant enjoyed at a place of prior employment. The Plaintiff argues that the benefits the Defendant enjoyed are not relevant to any determination about why the Defendant was terminated. In response, the Defendant argues that the documentary evidence goes to his "deep[] concern[] about becoming unemployed at his age." DE 194 at 3.

The documents subject to the Plaintiff's objections are not relevant—the documents either reference the Defendant's prior resignation or contain specificity about the Defendant's prior income and retirement benefits. Additionally, the probative value of such evidence in an age discrimination case is sufficiently low that the possibility of undue prejudice on the Plaintiff is too great—the jury may be tempted to conclude that because the Defendant gave up such lucrative benefits to work for the Plaintiff, and because the Defendant was terminated, the Plaintiff should be made to pay compensation to the Defendant even though the Defendant was an "at-will" employee. The Court **SUSTAINS** the Plaintiff's objections to Defendant's Exhibits 2, 15, and 179.[4]

---

4 The Court issues no ruling on Defendant's Exhibit 6, Exhibit 12, and Exhibit 180 because the Court cannot discern how those exhibits bear on the Defendant's prior employment or prior benefits. The Court issues no ruling on Defendant's Exhibit 11 because it was not provided to the Court.

The Court's ruling also applies to testimonial evidence. Any fear that the Defendant may have had about early termination at the time he was hired is not relevant to whether, years later, the Plaintiff engaged in age-based discrimination. Relatedly, any communication from the Defendant to the Plaintiff for how long he needed to work, or how long his desired term of employment was, are not relevant to the Plaintiff's basis for termination years later. Finally, any testimony about the Defendant's attempt to obtain a promise from the Plaintiff for a definite term of employment (which the Court has ruled to be an unenforceable promise) is not relevant to the basis for the Defendant's termination. In the alternative, even if the foregoing evidence could be considered relevant, it is outweighed by the undue prejudice the evidence would have on the Plaintiff—a jury may be tempted to conclude that the Plaintiff should pay compensatory damages, even if the Plaintiff's actions were lawful and not based upon age-based discrimination. The Defendant may testify, however, as to how long he would have chosen to remain employed for the Plaintiff (had he not been terminated), as that testimony goes to the Defendant's calculation of damages.[5]

<u>Prior Comments on the Defendant's Performance</u>

(Defendant's Exhibits 17, 18, 23, 24, 33, 34, 35, 40, 43, 50, 53, 70, 74, 76, 87, 90, 97, 100, and 101)

The Plaintiff objects to the admission of evidence that establishes that the Defendant was a good employee, pointing out that "Cutlass has never claimed that Mr. Jones never did a good job on any individual task, nor even that he never added value in the development process in 2017 and

---

[5] The Court notes that the parties' Amended Stipulation at docket entry 197 may have the effect of requiring the Defendant to testify about his intended length of employment only to the Court, and not to the jury.

2018." DE 186 at 4.  In response, the Defendant argues that he must rebut the pretextual basis for his termination that he was not a good employee.  As detailed above, the Court does not anticipate permitting the Plaintiff to advance the position at trial that the Defendant was not a good employee or to otherwise question the Defendant's job performance.  The Court therefore **SUSTAINS** the Plaintiff's objections to Defendant's Exhibits 17, 18, 23, 24, 33, 34, 35, 40, 43, 50, 53, 70, 74, 76, 87, 90, 97, 100, and 101, however, the Court's ruling may be revisited, should the Plaintiff open the door at trial to this evidence.

<u>The Personal Finances of the Plaintiff's CEO</u>

(Defendant's Exhibit 320)

The Plaintiff objects to the admission of a news report detailing the value of a home purchased by the CEO of the Plaintiff in 2021.  The Plaintiff persuasively argues that such a news report has no relevance to the determination of whether the Defendant was terminated because of his age in 2019.  In response, the Defendant argues that this evidence tends to show that the Plaintiff is in good financial health and, as a result, did not need to terminate the Defendant in 2019.  While evidence of compensation paid to the CEO *from* the Plaintiff could, perhaps, be relevant to a characterization of the Plaintiff's financial health, the CEO's personal decision to purchase a home is not relevant and, alternatively, is unduly prejudicial to the Plaintiff.  The Court **SUSTAINS** the Plaintiff's objection to Defendant's Exhibit 320.  This ruling is final and may not be revisited at trial.

<u>Documents Purportedly Related to Mine Safety Issues</u>

(Defendant's Exhibits 77, 93, 146, 270, 272, 274, 276, 277, 278, 279, 285, 286, 287, 288, 289, 290, 291, 292, 293, 294, 295, 296, 297, 298, and 299)

The Plaintiff objects to documentary evidence that purports to establish that the Defendant complained about mine safety issues. In response, the Defendant appears to acknowledge that, consistent with the Court's prior rulings,[6] mine safety is not relevant to this case. DE 194 at 6 ("Mr. Jones withdraws Exhibit 146, which is a video of issues at the subject mine."). The Defendant contends that the challenged exhibits establish the Defendant's "excellent job performance." The Court has already ruled that it does not anticipate permitting the Plaintiff to challenge the Defendant's job performance. The Defendant also contends, however, that the exhibits establish the Defendant's duties and establish that the Defendant's duties were needed after his termination and were given to other employees. Finally, the Defendant represents that the exhibits will be used to establish that the mine was a highly profitable enterprise. Based upon the Defendant's representation as to how these exhibits will be used at trial, the Court **OVERRULES** the Plaintiff's objections to the above-referenced exhibits because the Defendant's proffered use for the exhibits will be relevant at trial, however, the Court expresses no opinion on whether any particular exhibit meets or requires a hearsay exception.

<u>Documents Pertaining to the Plaintiff's 2021 Creditor Proceeding</u>

(Defendant's Exhibits 252, 253, 254, 255, 256, 257, 258, 259, 260, 261, 262, 263, 264, 326, 326A-GG)

The Plaintiff objects to the introduction of evidence pertaining to a Canadian creditor proceeding initiated by the Plaintiff in 2021, arguing that the Plaintiff's financial position in 2021 is not relevant to its financial position in 2019 when the Defendant was terminated. In response, the Defendant argues that the documents show that the Plaintiff has enjoyed great financial success

---

[6] *E.g.,* DE 181.

and will show the compensation it has been able to pay its employees subsequent to the Defendant's termination. The Court concludes that there is some relevance to these documents. A reasonable jury could infer that financial success in 2021 could have been foreseen in 2019; a reasonable jury could infer that because executives at the Plaintiff anticipated financial success in the near future, the lack of financial success in the year 2019 was not the true reason that the Defendant was terminated. The Court **OVERRULES** the Plaintiff's objections to the above-referenced exhibits, however, the Court expresses no opinion on whether any particular exhibit meets or requires a hearsay exception.[7]

### Documents Related to the Defendant's EEOC Charge

### (Defendant's Exhibits 163, 164, and 165)

The Plaintiff objects to the introduction of the Defendant's EEOC charge, arguing that there is no dispute that the documents were timely filed, and that the Defendant satisfied all conditions precedent to bring his age discrimination claim. In response, the parties filed a stipulation resolving this dispute at docket entry 197. The Court therefore expresses no opinion on the Plaintiff's objections.

### Receipts for Past Business Expenses

### (Defendant's Exhibits 41, 72, and 160)

The Plaintiff objects to the introduction of over one thousand pages of receipts, arguing that although it may have questioned a few of the business expenses that the Defendant incurred, the Defendant's business expenses were not the basis for his termination. In response, the

---

7 The Court **OVERRULES** the Plaintiff's objection to Defendant's Exhibit 322 for the same reason—an exhibit that shows coal prices in 2021 and 2022.

Defendant argues that he is entitled to show that his job performance was not a basis for his termination. As detailed above, the Court does not anticipate permitting the Plaintiff to advance the position at trial that the Defendant was not a good employee or to otherwise question the Defendant's job performance. The Court therefore **SUSTAINS** the Plaintiff's objections to Defendant's Exhibits 41, 72, and 160, however, the Court's ruling may be revisited, should the Plaintiff open the door at trial to this evidence.

Evidence of an Offer of Employment at Conuma Resources

(Plaintiff's Exhibits PX036, PX354-438, PX442-443, and PX510-516)

The Defendant objects on relevance grounds to the admission of documents describing an offer of employment that the Defendant received *after* he was terminated by the Plaintiff and *after* he accepted re-employment with his original, pre-Plaintiff employer. The Defendant previously argued that evidence of this type could not presented to the jury as a matter of law, and the Court rejected that argument:

> PAPERLESS ORDER. In the parties' Notice of Remaining Issues that Require Adjudication [173], the Defendant contends that his duty to mitigate his own damages ended when he accepted his current job. The Plaintiff contends that the Defendant's duty did not end when he accepted employment because, during his employment, he received another, better job offer (in Canada) and that the Defendant should have left his current employment and accepted the job offer in Canada. The affirmative defense of failure to mitigate damages "denies recovery for so much of the losses are as shown to have resulted from failure [on a defendants part] to use reasonable efforts to avoid or prevent the losses." *E.g., Ford Motor Co. v. Dallas Power & Light*, 499 F.2d 400, 414-15 (5th Cir. 1974). As best as the Court can discern from the record, the parties' dispute is a question for the jury. A jury will decide whether it would have been a "reasonable effort to avoid or prevent" losses for the Defendant to quit his job, move to Canada, and accept a different job. The Court, at this juncture, can see no basis for the exclusion of evidence pertaining to job offers that the Plaintiff contends the Defendant should have accepted to mitigate his own damages. The Court's decision is without prejudice for the Defendant to provide the Court with a case (in a future, amended notice of issues that require adjudication) that stands for the proposition that a jury cannot decide

>   whether a decision to reject a job offer was reasonable. The Court will set a date
>   for the amended notice of issues that require adjudication in a future order.

DE 182.  Because the Court invited the Defendant to provide case law contrary to the Court's conclusion, the Defendant has now provided three cases which the Court has reviewed.  DE 187 at 2 (citing *Sennello v. Reserve Life Ins. Co.*, 667 F. Supp. 1498 (S.D. Fla. 1987), *Smith v. Great American Rests.*, 969 F.2d 430, 438 (7th Cir. 1992), and *J. H. Rutter v. N.L.R.B.*, 473 F.2d 223 (5th Cir. 1973)).  The cases provided by the Defendant reinforce and support the Court's prior conclusion.  A jury must decide when it is reasonable to stop searching for employment, as the Defendant's cited cases explain. *E.g., Sennello*, 667 F. Supp. at 1513; *Great American*, 969 F.2d at 438.  The Defendant's objections are again **OVERRULED** as to the above-referenced exhibits, however, the Court expresses no opinion on whether any particular exhibit meets or requires a hearsay exception.  The Court also acknowledges, as correct, the Defendant's observation that he "does not understand [the Court's prior ruling] to state that *all* Conuma evidence is admissible." DE 187 at 3 (emphasis added).  That is true; the Court's ruling is necessarily general as it is grounded upon the (brief) legal argument that the parties have raised on these matters.  The Defendant is free to raise specific objections to specific exhibits, provided the Defendant complies with the Court's instructions on page one of this Order.

Evidence of the Plaintiff's Financial Difficulties

(Plaintiff's Exhibits PX72-73, PX90, PX97, PX100-101, PX105, PX114-115, PX117, PX119-125, PX129-133, PX146, PX148-150, PX160-172, PX184-189, PX215, PX221-225, PX27, PX 329, and PX 346-348)

The Defendant objects to the introduction of evidence that demonstrates the financial difficulties that the Plaintiff encountered.  Just as evidence of the Plaintiff's financial success

would be relevant and therefore admissible for the Defendant, evidence of financial *dis*tress is relevant and therefore admissible for the Plaintiff. The Defendant's argument as to why the above-referenced documents are irrelevant is difficult to understand:

> Here, after telling Mr. Jones that his termination had nothing to do with performance and assigning his duties to younger people, suddenly in this lawsuit, Cutlass has offered a series of shifting pretextual reasons to explain its age discrimination. It claims that his performance was lacking, that he was hard to get along with, that they were financially struggling. The shifting and new explanations render them pretext and make them irrelevant.

DE 187 at 4. First of all, even if the Plaintiff engaged in "shifting pretextual reasons" as to why the Defendant was terminated, the Plaintiff would still be entitled to introduce evidence in support of one of its proffered reasons—the evidence would not become irrelevant as the Defendant suggests. Second, the Plaintiff's reliance upon the concept of "shifting pretextual reasons" is misplaced for additional reasons as set forth below.

"Pretext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false." *Walker v. St. Joseph's/Candler Health Sys, Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013) (citing *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) and *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)). Throughout the legal argument supporting the Defendant's objections, the Defendant relies upon the premise that the Plaintiff's proffered non-discriminatory basis for the Defendant's termination is "new,"[8] and "shifting."[9] The Defendant also contends that the Plaintiff did not raise its defense at summary judgment. DE 194 at 2. The Defendant is incorrect.

---

8 DE 194 at 7.
9 DE 194 at 1.

As the Court has explained in its analysis of the Plaintiff's pretrial stipulation, the Plaintiff contends that the Defendant was terminated because: (1) the Plaintiff was experiencing financial difficulties, (2) the Defendant's compensation was high, (3) the Defendant's primary role and primary duties were no longer valuable to the Plaintiff, when those primary duties were juxtaposed to the Defendant's compensation, and (4) the Defendant's secondary/tertiary duties could be performed by other employees who worked for less compensation. The Plaintiff's position has been consistently maintained by the Plaintiff throughout this proceeding.

The Plaintiff's Answer to the Defendant's Amended Counterclaim[10] asserted, generally, that the Defendant was terminated for non-discriminatory reasons, but at summary judgment the Plaintiff proffered as a specific reason for its termination: "[mine] development was over and [the Defendant's] position was no longer needed." DE 65 at 20. The facts supporting the Plaintiff's Motion for Summary Judgment included facts about the Plaintiff's financial distress prior to the Defendant's termination:

> 27. Prior to Defendant's termination, Cutlass was failing to make timely payments to vendors and was eventually put on Cash on Delivery requirements by several vendors.
>
> 28. Cutlass was struggling financially, in part, because it did not have enough funds from the Cline estate to complete the mine and make it operational.
>
> 29. As such, Cutlass was in "cost-cutting, cash-preservation mode" prior to Defendant's termination.
>
> 30. In October 2019, it was well known that Cutlass was struggling operationally.

DE 64 at 6-7 (citations omitted). The primary fact relied upon by the Plaintiff at summary judgment was:

---

10 The Defendant's original Counterclaim did not bring a claim for age discrimination.

13

> 52. At the time of his termination, Defendant was told he was being terminated "because the major construction on the job [was] complete" and Cutlass no longer needed "someone of [his] caliber."

*Id.* at 10 (citations omitted). The Defendant's own deposition testimony confirms that he was told, at the time of his termination, that the Plaintiff no longer needed someone of his "caliber." *Id.*

If the Plaintiff were to rely upon a basis for termination that was not given to the Defendant at the time of his termination, the Court would understand why caselaw on "shifting explanations" might apply. But the Plaintiff's non-discriminatory basis for termination discussed in its pretrial stipulation is neither "new" nor "shifting." The basis the Defendant was given for termination at the time of termination (someone of his caliber was no longer needed), is compatible with the Plaintiff's pretrial stipulation. True, the Plaintiff has at times asserted *other* grounds for termination besides the grounds listed in its stipulation, including that the Defendant was, in essence, a bad worker. But those positions will not be pursued at trial, consistent with the Court's analysis above. Therefore, if the Defendant relies upon a "shifting explanation" basis for the admission or exclusion of evidence at trial, the Defendant must be prepared to carefully address the Court's concerns and conclusions outlined in this Order.

Turning back to the exhibits at issue in this category, the Defendant's objections to the above-referenced exhibits are **OVERRULED**, however, the Court expresses no opinion on whether any particular exhibit meets or requires a hearsay exception.

Stillwater Contract Communications

(Plaintiff's Exhibits PX232-233, PX235-245, PX249-260, PX279-280, and PX345)

The Defendant objects to the admission of documents concerning the Plaintiff's negotiation of a contract with another company, Stillwater. The Defendant represents that the Plaintiff's

14

intended use for these documents is to establish that the Defendant did a poor job in negotiating the terms of the contract, and that this poor performance was a non-discriminatory basis for the Defendant's termination. The Defendant's representation about the Plaintiff's intended use for these documents bears support in the record, because the CEO for the Plaintiff testified in his deposition that the Defendant's negotiations with Stillwater were "the straw that broke the camel's back" and led to his termination. DE 64-9 at 13.

In response, the Plaintiff does not disavow its intent to use these documents to argue that the Defendant did a poor job in negotiating an agreement with Stillwater and is instead silent on the documents' intended use. As the Court has ruled, the Plaintiff may not argue at trial that the Defendant was a bad employee or otherwise question his job performance. Accordingly, to the extent the Plaintiff intended to use these documents as the Defendant represents, the Defendant's objections to the above-referenced exhibits are **SUSTAINED**.[11]

<u>Mineware Servicing Documents</u>

(Plaintiff's Exhibits PX136-137, PX153-159, PX173-175, PX179, PX191-201, PX204-214, PX216-220, PX225-231, PX234, PX246, and PX333)

The Defendants object to the admission of documents that concern duties that the Defendant was assigned (pertaining to a software program called Mineware) that were allegedly taken from him and given to a younger employee. The Defendant concedes that these documents are, as a general matter, relevant, but argues that certain documents are sufficiently attenuated to

---

11 The Court has reviewed the exhibits at issue and is uncertain how the Plaintiff would utilize the exhibits at trial. Because the Plaintiff has elected not to describe its intended use for the documents in its response to the Defendant's objections, the Court has relied upon the Defendant's characterization of the Plaintiff's use for those exhibits, given the record supports the Defendant's characterization.

the Defendant's duties that they should not be admitted. Because the Defendant's objection lacks any specificity and because the Defendant concedes the general relevance of these documents, the Court issues no ruling and will await specific objections to specific exhibits at trial.

The Defendant's Communications with other Companies

(Plaintiff's Exhibits PX042, PX349, PX351, PX444-453, PX493, and PX497)

Towards the end of his employment with the Plaintiff, the Defendant testified that he "saw the writing on the wall" and began to contact other companies, seeking employment. The Defendant objects to the admission of these documents, arguing they have no relevance to whether the Defendant was terminated as a result of age discrimination. In response, the Plaintiff argues that these documents are relevant to its affirmative defense of failure to mitigate damages. The Plaintiff represents that the documents will be used to establish that the Defendant wanted a lower-paying job, provided the job required him to travel less than his position at the Plaintiff. Thus, when the Defendant accepted a lower-paying position after his termination, the Plaintiff will argue that the Defendant was not interested in fully mitigating his damages—that he chose to mitigate his damages only partially because he no longer desired a position that was substantially comparable to the position that he enjoyed at the Plaintiff. Additionally, the Plaintiff represents that these documents will show that the Defendant knew of the financial problems at the Plaintiff, and that he wanted to find other employment as a result of that knowledge. Based upon the Plaintiff's proffer of how these documents will be used at trial, the Defendant's objections to the above-referenced exhibits are **OVERRULED**, however, the Court expresses no opinion on whether any particular exhibit meets or requires a hearsay exception.

<u>All Remaining Objections</u>

The Court expresses no opinion on the remaining objections referenced in the parties' briefing because the briefing supporting those objections does not lend itself to pretrial adjudication. Finally, because the Court has ruled on most of the issues referenced in the parties' Notice of Remaining Issues that Require Adjudication at docket entry 173, the parties are **ORDERED** to file an updated, amended Notice of Remaining Issues that Require Adjudication. The amended Notice is due by 5:00 p.m. on February 22, 2022.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 18th day of February, 2022.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record