UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-CV-80001-ROSENBERG/REINHART

CUTLASS COLLIERIES, LLC, n/k/a
VISTA ENERGY RESOURCES, LLC,

    Plaintiff/Counterdefendant,

v.

GARRETT MYRON JONES,

    Defendant/Counterclaimant.
_____/

## ORDER ON THE PARTIES' PROPOSED JURY INSTRUCTIONS

The Court has reviewed the parties' proposed jury instructions at docket entries 211 and 212. In the interest of streamlining trial and in the interest of respecting the time commitment of the jury's public service, the Court has ruled on as many disputed issues in the proposed instructions as possible. The Court's ruling is without prejudice insofar as the parties will be heard at trial, should they object to any of the Court's edits or conclusions. Each disputed issue in the parties' proposed instructions is addressed in turn.

Modifications to the Pattern Jury Instructions

It is the Court's standard practice to adhere to pattern jury instructions unless there is a compelling reason to deviate from the pattern. At various points in the proposed jury instructions, the parties propose modifications to the pattern instructions. By way of example, Cutlass proposes that the conjunction "and" be modified to "or" in the pattern instruction for an age discrimination claim. DE 212 at 30. The Court finds no compelling reason to deviate from the pattern jury instructions, and declines to do so.

### The Alleged Adverse Action

The pattern jury instruction for an age discrimination claim repeatedly utilizes a brief description of the adverse action undertaken by the employer-defendant. Throughout the parties' proposed instructions, the parties disagree on the brief description. Cutlass describes the adverse action as "terminating" Mr. Jones, while Mr. Jones describes it as "eliminating his position or terminating" him. *E.g.,* DE 212 at 26. The Court finds that Cutlass's description of the adverse action—a simple, succinct reference to "termination"—is sufficient to instruct the jury, particularly when there is no disagreement between the parties that termination qualifies as an actionable adverse action. Mr. Jones is, of course, free to present evidence of other alleged adverse actions (that predated termination) that he contends were related or intertwined with his termination, and to argue the same to the jury. With one exception,[1] the Court has used the word "termination" throughout the jury instructions to describe the adverse action in this case.

### Instructions Requiring the Jury to Find Damages

Mr. Jones proposes various non-pattern jury instructions wherein the Court instructs the jury to find that Mr. Jones has met his burden to quantify his damages and to instruct the jury on the amount of damages that the jury should find:

> If you determine that Mr. Jones has prevailed on his age discrimination claim, you **must award** him the net lost salary amount that he lost as a result of his Cutlass termination. To determine the amount of the net lost salary, you are instructed that Mr. Jones's Cutlass salary was $400,000. The period that **you must** award this, if you have determined that he prevails on his claim, is from November 11, 2019, until the date of your verdict. You must reduce this salary amount by the amount of salary that Mr. Jones has received from his present employer, Linder Industrial Machinery, from October 5, 2020, until the date of your verdict.

---

1 The Court has incorporated Mr. Jones's description of his claim at the beginning of the pattern jury instruction for an age discrimination claim: "Mr. Jones claims that Cutlass eliminated his position and terminated his employment because of his age."

*Id.* at 40 (emphasis added).  This instruction is improper, as it is hornbook law that Mr. Jones must prove his damages.  The Court declines to instruct the jury on the amount of damages that the jury must or should find.  Instead, the Court will adhere to the pattern jury instruction on damages:

> If you find in Mr. Jones's favor for each fact he must prove, you must consider Mr. Jones's compensatory damages.
>
> When considering the issue of Mr. Jones's compensatory damages, you should determine what amount, if any, has been proven by Mr. Jones by a preponderance of the evidence as full, just and reasonable compensation for all of Mr. Jones's damages as a result of Mr. Jones's termination, no more and no less. Compensatory damages are not allowed as a punishment and must not be imposed or increased to penalize Cutlass. Also, compensatory damages must not be based on speculation or guesswork.
>
> You should consider the following elements of damage, to the extent you find that Mr. Jones has proved it by a preponderance of the evidence, and no others: net lost wages and benefits from the date of Cutlass's termination of Mr. Jones to date of your verdict.

Consistent with this instruction, Mr. Jones shall be required at trial to prove by a preponderance of the evidence the "full, just and reasonable compensation" for all of his damages and "no more and no less."

Mitigation of Damages

Each party has provided a non-pattern proposed jury instruction that summarizes his/its own view of how Mr. Jones should have mitigated his damages in this case.  Mr. Jones proposes an instruction that informs the jury that if he made an "honest and good faith effort" to find employment subsequent to his termination, his duty to mitigate his damages ended, even if the job he accepted was not substantially equivalent to his job at Cutlass. *Id.* at 45.  For its part, Cutlass proposes an instruction that reads: "[if] Mr. Jones received offers for jobs that were substantially

comparable to his former employment with Cutlass that he unreasonably rejected," then Mr. Jones's damages stopped accruing. *Id.* at 46.

The Court declines to adopt either party's instruction and will instead utilize the pattern jury instruction which reads as follows:

> You are instructed that any person who claims damages as a result of an alleged wrongful act on the part of another has a duty under the law to "mitigate" those damages. For purposes of this case, the duty to mitigate damages requires Mr. Jones to be reasonably diligent in seeking substantially equivalent employment to the position he held with Cutlass. To prove that Mr. Jones failed to mitigate damages, Cutlass must prove by a preponderance of the evidence that: (1) work comparable to the position Mr. Jones held with Cutlass was available, and (2) Mr. Jones did not make reasonably diligent efforts to obtain it. If, however, Cutlass shows that Mr. Jones did not make reasonable efforts to obtain any work, then Cutlass does not have to prove that comparable work was available.
>
> If you find that Cutlass proved by a preponderance of the evidence that Mr. Jones failed to mitigate damages, then you should reduce the amount of Mr. Jones's damages by the amount that could have been reasonably realized if Mr. Jones had taken advantage of an opportunity for substantially equivalent employment.

Consistent with this pattern jury instruction, Mr. Jones is free to argue that the job he accepted after his termination was "substantially equivalent" to his position at Cutlass, and that his rejection of subsequent offers of employment (and his decision to stay with his current employer) was reasonable. Conversely, Cutlass is free to argue that Mr. Jones's current position is not substantially equivalent to his former position at Cutlass and that Mr. Jones was unreasonable to reject later, subsequent offers (which, as the Court understands, offered Mr. Jones considerably more compensation).

### Instructions on the Alleged Weakness of the Cutlass Defense

Mr. Jones has proposed a jury instruction wherein the Court informs the jury of an alleged weakness in the Cutlass defense:

4

> You are instructed that Cutlass offered a job to Michael Snelling, a material witness, in the week before Mr. Snelling's sworn deposition in this case. I hereby instruct you may consider that job offer as an admission by Cutlass as to the weakness of its case.

*Id.* at 38. Although Mr. Jones may, of course, cross-examine witnesses on the subject of bias and the like, the Court rejects this instruction as completely improper. Suffice it to say that the Court's instructions to the jury are not intended to be a vehicle to articulate an alleged weakness in a party's case. The Court highlights this instruction in this Order to underscore its admonition to the parties on February 23, 2022, that due to the proximity of trial it is important that the parties, working together as professionals, bring this case to a conclusion in a manner that respects the time commitment of the jury's service.

Instructions on Disparate Impact

Mr. Jones proposes a non-pattern jury instruction:

> You may find Cutlass's intent to discriminate if Cutlass consciously refused to consider retaining Mr. Jones because of his age or if Cutlass regarded age as a negative factor in such consideration. For purposes of this instruction, you shall consider that Cutlass admits that its CEO, Michael Beyer, did not consider Mr. Jones's age in terminating him and never considers someone's age for employment decisions, whether hiring or firing.

*Id.* at 36-37. First of all, if the jury were to find that Cutlass "did not consider Mr. Jones's age in terminating him," the jury would be required to find in favor of Cutlass—not Mr. Jones. Second, Mr. Jones cites as authority for this instruction disparate-impact discrimination cases, cases where non-discriminatory grounds for termination cause a disparate impact on a protected class. *Allison v. Western Union Tel. Co.*, 680 F.2d 1318 (11th Cir. 1982). This is not a disparate impact case. Mr. Jones has not pled such a case—the words "impact" and "disparate" do not appear in Mr. Jones's operative Counterclaim. The pretrial stipulation similarly does not frame a disparate

impact case. The burden of proof for a disparate impact claim is distinct from a typical age discrimination case: a plaintiff must show that a non-discriminatory basis for termination fell "more harshly on one group than another and cannot be justified by business necessity." *Id.* at 1322. Mr. Jones's proposed instruction is rejected as having no relationship to the pleadings or the pretrial stipulation.

Jury Instructions on "Shifting Explanations"

Throughout the proposed jury instructions, Mr. Jones makes references to "shifting explanations" that Cutlass has offered as the non-discriminatory basis for its termination of Mr. Jones and requests that the jury be instructed that it may consider those shifting explanations in its deliberations. The Court addressed this issue in an earlier order as follows:

> [T]he Plaintiff's reliance upon the concept of "shifting pretextual reasons" is misplaced for additional reasons as set forth below.
>
> "Pretext may also be established by proof of inconsistent statements or shifting explanations for the adverse employment decision, suggesting that the articulated reasons are recently fabricated or false." *Walker v. St. Joseph's/Candler Health Sys, Inc.*, 506 F. App'x 886, 889 (11th Cir. 2013) (citing *Bechtel Constr. Co. v. Sec'y of Labor*, 50 F.3d 926, 935 (11th Cir. 1995) and *Tidwell v. Carter Prods.*, 135 F.3d 1422, 1428 (11th Cir. 1998)). Throughout the legal argument supporting the Defendant's objections, the Defendant relies upon the premise that the Plaintiff's proffered non-discriminatory basis for the Defendant's termination is "new,"[2] and "shifting."[3] The Defendant also contends that the Plaintiff did not raise its defense at summary judgment. DE 194 at 2. The Defendant is incorrect.
>
> As the Court has explained in its analysis of the Plaintiff's pretrial stipulation, the Plaintiff contends that the Defendant was terminated because: (1) the Plaintiff was experiencing financial difficulties, (2) the Defendant's compensation was high, (3) the Defendant's primary role and primary duties were no longer valuable to the Plaintiff, when those primary duties were juxtaposed to the Defendant's compensation, and (4) the Defendant's secondary/tertiary duties could be performed by other employees who worked for less compensation. The Plaintiff's

---

[2] DE 194 at 7.
[3] DE 194 at 1.

position has been consistently maintained by the Plaintiff throughout this proceeding.

The Plaintiff's Answer to the Defendant's Amended Counterclaim [4] asserted, generally, that the Defendant was terminated for non-discriminatory reasons, but at summary judgment the Plaintiff proffered as a specific reason for its termination: "[mine] development was over and [the Defendant's] position was no longer needed." DE 65 at 20. The facts supporting the Plaintiff's Motion for Summary Judgment included facts about the Plaintiff's financial distress prior to the Defendant's termination:

> 27. Prior to Defendant's termination, Cutlass was failing to make timely payments to vendors and was eventually put on Cash on Delivery requirements by several vendors.
>
> 28. Cutlass was struggling financially, in part, because it did not have enough funds from the Cline estate to complete the mine and make it operational.
>
> 29. As such, Cutlass was in "cost-cutting, cash-preservation mode" prior to Defendant's termination.
>
> 30. In October 2019, it was well known that Cutlass was struggling operationally.

DE 64 at 6-7 (citations omitted). The primary fact relied upon by the Plaintiff at summary judgment was:

> 52. At the time of his termination, Defendant was told he was being terminated "because the major construction on the job [was] complete" and Cutlass no longer needed "someone of [his] caliber."

*Id.* at 10 (citations omitted). The Defendant's own deposition testimony confirms that he was told, at the time of his termination, that the Plaintiff no longer needed someone of his "caliber." *Id.*

If the Plaintiff were to rely upon a basis for termination that was not given to the Defendant at the time of his termination, the Court would understand why caselaw on "shifting explanations" might apply. But the Plaintiff's non-discriminatory basis for termination discussed in its pretrial stipulation is neither "new" nor "shifting." The basis the Defendant was given for termination at the time of termination (someone of his caliber was no longer needed), is compatible with the

---

4 The Defendant's original Counterclaim did not bring a claim for age discrimination.

> Plaintiff's pretrial stipulation. True, the Plaintiff has at times asserted *other* grounds for termination besides the grounds listed in its stipulation, including that the Defendant was, in essence, a bad worker. But those positions will not be pursued at trial, consistent with the Court's analysis above. Therefore, if the Defendant relies upon a "shifting explanation" basis for the admission or exclusion of evidence at trial, the Defendant must be prepared to carefully address the Court's concerns and conclusions outlined in this Order.

DE 198 at 12-14. Because Mr. Jones has again heavily relied upon the concept of "shifting explanations" in his proposed jury instructions, the Court again addresses this topic.

In *Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189 (11th Cir. 2004), the Eleventh Circuit addressed a "shifting explanations" theory of discrimination. In *Cleveland*, an employer alleged that an employee was terminated because the employee had participated in an unauthorized infomercial. *Id.* at 1194. When the employer was pressed for *why* participation in the infomercial was prohibited, the employer's response kept changing: from it was prohibited by contract, to prohibited by an unwritten policy, to prohibited by standard industry practice. *Id.* at 1195. Because the underlying basis kept changing, the Eleventh Circuit concluded that a reasonable jury could infer that the basis for termination—participation in an infomercial—was not credible. And the reason the jury could so infer was because the reasons "were inconsistent," and through such inconsistency, the jury could infer that the employer's explanation "was unworthy of credence." *Id.* Other published Eleventh Circuit cases on "shifting explanations" center on "inconsistency" as well. *E.g., Howard v. BP Oil Co., Inc.*, 32 F.3d 520 (11th Cir. 1994). The reason inconsistency may be considered by a jury is because inconsistency is evidence of dishonesty, and dishonesty means that an employer's grounds for termination may be discredited. *E.g., Abramson v. William Paterson Coll.*, 260 F.3d 265 (3d Cir. 2001) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000)).

8

The Court turns to a case where a "shifting explanations" theory was rejected by a district court. In *EEOC v. West Customer Mgmt. Grp., LLC*, No. 3:10-cv-378, 2014 WL 4409920 (N.D. Fla. July 28, 2014), a plaintiff-employee[5] possessed little affirmative evidence of discrimination. As a result, the plaintiff based his case at trial upon a "shifting explanations" theory. *Id.* at *5. At the time the plaintiff was not hired, the defendant told him that the reason for its decision was the plaintiff's lack of computer skills and his thick accent. *Id.* at *5 n.11. At trial, the defendant abandoned the theory that the plaintiff's computer skills played a role—the defendant relied upon the plaintiff's thick accent. *See id.* at *5. After the plaintiff failed to prevail at trial, the defendant moved for attorney's fees, essentially arguing that the plaintiff's case was frivolous as he lacked valid comparators. *Id.* at *1-6. In response, the plaintiff argued that the reason his case was not frivolous was because of the "shifting explanations" for the reason he was not hired. *Id.* The district court rejected the plaintiff's response, noted that the accent alone was a sufficient basis not to hire the plaintiff, and awarded attorney's fees to the defendant. *Id.* at *5.

Another case where a court rejected a "shifting explanations" theory is *Thomas v. AT&T Corp.*, No. 1:04-CV-1787, 2006 WL 8431287 (N.D. Ga. Dec. 29, 2006). In *Thomas*, the plaintiff-employee contended that he had been the victim of racial discrimination through, essentially, the assignment of his pay grade. *Id.* at *1-3. The defendant-employee relied upon several non-discriminatory reasons for the plaintiff's assigned pay grade. *Id.* at *9-12. The plaintiff asserted, however, that the defendant had offered additional reasons (later abandoned) for why the plaintiff had been assigned his pay grade. *Id.* at *11. The Court rejected the plaintiff's "shifting explanations" theory through an examination of all the proffered reasons for termination, included

---

5 The EEOC brought the case on behalf of the employee.

9

the abandoned reasons. *Id.* The Court found that the reasons were not "inherently inconsistent or contradictory with the legitimate, nondiscriminatory reason proffered" by the defendant. *Id.* Instead, because the defendant's (older) reasons for termination did not "conflict" with the (newer) reasons raised in the litigation, the court concluded that jury could not find the prior reasons were evidence of pretext. *Id.*

Applying the foregoing cases to the instant case, the Court can see no *inconsistency* or conflict in arguing that Mr. Jones was terminated because: (i) Cutlass finances were in trouble, (ii) Mr. Jones was a costly employee to employ, (iii) Mr. Jones's services were no longer needed, and (iv) Mr. Jones was a bad worker who failed to get along with others. Instead, this last reason represents an *unpursued, abandoned* theory of termination, not an inconsistent theory of termination. Similarly, the Court can see no inherent inconsistency in the deposition testimony of the Cutlass CEO, who testified to various performance-related problems of Mr. Jones, but also testified that he did not terminate Mr. Jones for performance-related reasons. Finally, the Court can see no inconsistency with Cutlass's pretrial stipulation and the reasons Cutlass gave Mr. Jones for his termination at the time of his termination. Instead, the inconsistency that Mr. Jones may have identified is between the testimony of the Cutlass CEO—testifying that performance was not a basis for termination—and the legal position that Cutlass took through its counsel at summary judgment—that performance was a valid, non-discriminatory basis for termination. Herein lies the problem.

The Court is not accustomed with evidence or argument to the jury taking the form of the Court's prior rulings or briefs that the parties filed in connection with those rulings. The Court does not understand how an abandoned legal argument, previously raised on summary judgment,

can be evidence that the jury considers, particularly when there is nothing inherently inconsistent in terminating Mr. Jones for his performance and terminating Mr. Jones because of financial troubles at Cutlass. Until such time as Mr. Jones persuades the Court that abandoned legal positions from summary judgment may be utilized at trial as evidence of inconsistency, Mr. Jones may not seek to introduce evidence of this type.[6] Relatedly, the Court will not permit questions about Mr. Jones's performance in light of Cutlass's stipulation that performance was not the basis for his termination, unless a party persuades the Court that such questions are relevant. The Court's rulings are without prejudice insofar as the parties are free to argue this point and attempt to change the Court's mind on the subject.

The Court rejects all of the other non-pattern jury instructions proposed by the parties without comment. The Court's redline draft of the jury instructions, incorporating all of the Court's changes, is attached to this Order. A clean copy of the Court's edited jury instructions is attached as well.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 25th day of February, 2022.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[6] The Court is further concerned that such questions could lead to a mini-trial on why and how Cutlass pursued its summary judgment strategy.